**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-649-JDB-1** |
| **MICHAEL J. DICKINSON** | |
| **Defendant.** | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Michael J. Dickinson to 27 month's incarceration, three years of supervised release, $2,000 in restitution, a fine, and the mandatory $100 special assessment.

**INTRODUCTION**

The defendant, Michael J. Dickinson, a screen printer for athletic apparel who lives in Philadelphia, Pennsylvania, violently attacked the United States Capitol on January 6, 2021 – providing valuable aid to a mob that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Dickinson traveled to Washington, D.C. from his home in Philadelphia to protest

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $ 2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Congress's Certification of the Electoral College votes. On two separate occasions on the north side of the Capitol grounds the defendant assaulted law enforcement officers who stood to protect the U.S. Capitol building. In one instance, Dickinson emerged from a hostile crowd and threw a coffee tumbler at the officers, striking one in the face. In the second instance, Dickinson dumped a bucket of liquid on the officers as they attempted to subdue a violent protestor.

A 27-month period of incarceration reflects the gravity of Dickinson's conduct, credits his acceptance of responsibility, and meets the needs of general and specific deterrence based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

## I.      FACTUAL BACKGROUND

### A.      The January 6, 2021 Attack on the Capitol

In order to avoid unnecessary description, please refer to the stipulated Statement of Offense filed in this case. ECF 1, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.      Dickenson's Role in the January 6, 2021 Attack on the Capitol

Michael Dickinson participated in the January 6 attack on the Capitol. His crimes are documented through a series of videos provided to the FBI by concerned citizens, open-source video, and surveillance footage from outside the Capitol grounds.

After arriving in Washington, D.C. from his home in Philadelphia, Dickinson joined a large group of protestors that had gathered on the north side of the U.S. Capitol. Metropolitan Police Department officers stood together in a line on an elevated terrace in an effort to prevent the protestors from advancing to the Capitol. At approximately 3:06 p.m. a member of the crowd

began a count-down in an apparent effort to incite a charge of the police line. After reaching "one"

several protestors surged towards the police line. As the officers struggled to control the area and

prevent a breach of the line, Dickinson stepped forward and threw what appeared to be a coffee

tumbler at them, hitting Officer JB in his face shield and chest. Dickinson then fled the area.



*Figure 1- Dickinson prepares to throw an object*



*Figure 2 - Dickinson throws an object (inner circle)*



*Figure 3- Close up of thrown object*



*Figure 4- Dickinson flees after throwing the object*

In a separate incident, also on the north side of the Capitol, Dickinson was again present in a crowd that faced off against a line of police officers. As the officers moved forward in an effort to disperse the crowd, a protestor resisted and became violent. Dickinson, who was nearby, picked up a bucket containing an unknown liquid and dumped it on the officers.[2]



*Figure 5- Dickinson picks up bucket*

---

[2] The Government has been unable to determine which assault took place first.

5



*Figure 6- Dickenson throws liquid on officers*

Dickinson's time on Capitol grounds ended shortly after these two incidents. At 4:56 p.m. Dickinson was seen by District of Columbia Fire and EMS after suffering an injury to his face, He was transported to a local hospital where he was admitted until discharged the next day.

## II.     THE CHARGES AND PLEA AGREEMENT

On September 30, 2021, Dickinson was charged with various offenses by a sealed complaint. ECF 1. He was arrested on October 6, 2021. On October 29, 2021, a federal grand jury returned an eight-count indictment, charging Dickenson with: (1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2 and 3) two counts of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); (4) Entering or Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1); (5) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (6) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); (7) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (8) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). ECF 11.

On September 6, 2022, Dickinson pleaded guilty to Count Two of the Indictment, charging Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). ECF 27-29.[3]

## III.    STATUTORY PENALTIES

As noted by the plea agreement and the U.S. Probation Office, Dickinson faces up to eight years of imprisonment, a fine up to $250,000, and a term of supervised release of not more than three years for his violation of 18 U.S.C. § 111(a)(1). (PSR ¶¶, 4, 75, 83, 96).

## IV.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.*

In their plea agreement, ECF 27, the parties stipulated to the following Sentencing Guidelines calculations:

Base Offense Level: U.S.S.G. §2A2.2(a)           14

Official victim: U.S.S.G. §3A1.2(b).           +6

Acceptance of responsibility: U.S.S.G. § 3E1.1     -3

---

[3] Pursuant to the plea agreement Dickinson agreed to make himself available to law enforcement for an interview about his activities on January 6 and to provide access to his social media accounts if requested by law enforcement. No request has been made.

Adjusted Offense Level                              17

*See* ECF 27, ¶ 5(A). Based on an agreed-upon Criminal History Category of I, ECF 27, ¶ 5(B), the

parties estimated the applicable Guidelines range to be 24 to 30 months, *id*. at ¶ 5(c).

The Probation Office has included in its offense level computation a 4-point enhancement

pursuant to U.S.S.G. § 2A2.2(b)(2)(B) for use of a dangerous weapon, here, the coffee tumbler.

PSR ¶ 32. This enhancement was not included in the plea agreement and results in an offense level

of 21. PSR ¶ 40. Coupled with the criminal history score of I, Probation recommends a sentencing

range of 37-to-46 months. PSR ¶ 76.

The government does not object to the 4-point dangerous weapon enhancement included

by the Probation Office. However, in keeping with the government's plea agreement, coupled with

the fact that the object – a small tumbler – was neither recovered nor caused any injury evincing

an intent to cause serious bodily injury or death, the government advocates for its anticipated

guidelines. Accordingly, the government recommends that the Court impose a sentence within the

stipulated Guidelines range. [4]

## V.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance,

the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Dickenson's felonious conduct on January

---

[4] Based on the facts and circumstances of Dickenson's case, the government does not seek imposition of an upward departure pursuant to U.S.S.G. § 3A1.4 n.4 (*see* Plea Agreement at ¶5(C)) because a sentence within the Guidelines range of 24 to 30 months is sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).

6, 2021 was part of a massive riot that almost succeeded in preventing the Certification Vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crises. The nature and circumstances of Dickenson's offense were of the utmost seriousness, and fully support the government's recommended sentence of a 27 months' sentence.

### B.  Dickenson's History and Characteristics

Dickinson's history and characteristics suggest that a sentence of 27 months' incarceration is warranted. Dickinson has no criminal history and has accepted responsibility for his actions on January 6, 2021 as is evidenced by his guilty plea. Although this is commendable, Dickinson participated in a violent mob intent on stopping Congress's Certification of the Electoral College and his multiple violent acts against the police officers who stood between the rioters and the U.S. Capitol building to prevent rioters from entering.

### C.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Dickinson's violent criminal conduct, particularly his throwing of a potentially dangerous object and dumping an unknown fluid on vastly outnumbered police officers while they were valiantly protecting the Capitol building and all its lawful occupants against a violent mob, was a deadly serious offense as well as the epitome of disrespect for the law.

### D.    The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The need to deter others is especially strong in cases involving

domestic terrorism, which the breach of the Capitol certainly was.[5] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Dickinson has no prior criminal history. And yet, for many of the January 6 defendants, the question is not whether they will commit future violence in general. Instead, the question is whether they pose a risk of future political violence: whether, faced with an election result they do not like, they will gather other like-minded individuals and try---once again---to overturn a legitimate process by force. Democracy, after all, depends on the consent of both winners and losers. It depends on our common commitment to a process that is more important than a single outcome. Through his behavior on January 6, Dickinson demonstrated that he poses such a future risk.

### E.      The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its

---

[5] *See* 18 U.S.C. § 2331(5) (defining "'domestic terrorism'").

determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.      Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct".   So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); accord United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and

balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).

If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

This case bears significant similarities to others in which defendants were convicted by guilty plea of assaulting police officers during the riot at the Capitol on January 6, 2021. In those other cases, this Court and others have imposed lengthy sentences of incarceration. Indeed, in some of those cases, courts have imposed sentences similar to that requested by the government, here.

For instance, in *United States v. Creek*, 1:21-cr-645 (DLF), the defendant, like Dickinson, was part of the group of rioters that encountered a police line on Capitol grounds. After Creek pushed through the police barriers with other rioters, he forcefully drove an officer back, then hit the officer in his face shield. He shoved and kicked another officer. *Creek*, Sent. Tr. 05/02/2022 at 58-59. Although the government argued that Creek used a ratchet strap as a dangerous weapon, Judge Friedrich declined to make such a finding and did not apply the enhancement under U.S.S.G. § 2A2.2(b)(2)(B). *Creek*, Sent. Tr. at 59-60, May 2, 2022. Based on a Sentencing Guidelines range of 24 to 30 months, Judge Friedrich imposed the government's recommended sentence of 27 months' incarceration and 12 months' supervised release.

In *United States v. Willden,* 1:21-cr-423 (RC), the defendant approached police officers guarding the Rotunda Doors on the east side of the Capitol. Instead of splashing them with liquid he sprayed them with a chemical irritant. Unlike Dickinson, Wilden breached the Capitol building and remained inside for approximately 15 minutes. He also bragged about his assault on police in a Facebook post. Sent. Tr. at 27-33, August 5, 2022. Based on a Guidelines range of 24 to 30 months, Judge Contreras imposed a custodial sentence of 24 months.

13

In *United States v. Languerand,* 1:21-cr-353 (JDB), the defendant threw a heavy traffic bollard and sticks at law enforcement officers defending the Capitol. Languerand also used a riot shield against the police and expressed pride in his conduct over social media stating that "next time we come back with rifles." Based on a Guidelines range of 46 to 57 months, this Court, acknowledging the defendant's difficult childhood and regret "that borders on remorse" circumstance" imposed a custodial sentence of 44 months. Sent. Tr. at 39-41, January 26, 2022.

## VI.    RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes."[6] *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990), identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2), and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Dickinson must pay $2,000 in restitution to the Architect of the

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, does not apply here. *See* 18 U.S.C. § 3663A(c)(1).

14

Capitol, which reflects in part the role Dickinson played in the riot on January 6.[7] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,734,783.14" in damages, a figure based on loss estimates supplied by the Architect of the Capitol in mid-May 2021. *Id.* Dickinson's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol. *See* PSR ¶ 141.

## VII.    CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 27 month's incarceration, three years of supervised release, $2,000 in restitution, a fine, and the mandatory $100 special assessment.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW W. GRAVES
UNITED STATES ATTORNEY

By:    /s/ *Barry K. Disney*
       Barry K. Disney
       KS Bar No. 13284
       Assistant United States Attorney – Detailee
       U.S. Attorney's Office for the District of Columbia
       601 D Street, N.W.
       Washington, D.C. 20530
       Email:  Barry.Disney@usdoj.gov
       Cell: (202) 924-4861

</div>

---

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).