UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America ) | |
| ) | |
| v.    ) | USDC No. 21-cr-649 (JDB) |
| ) | |
| Michael Dickinson, *defendant*. ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on February 16, 2023 at 3 o'clock p.m. when he appears in person before the Court for his sentencing hearing.

1. The defendant was arrested on Oct. 6, 2021, in the Eastern District of Pennsylvania in docket #2:21MJ1522.  Criminal complaint 22-mj-621 (RMM) issued in this case.  It charged the defendant with a number of offenses, including the felonies of Civil Disorder and Assaulting/Resisting/Impeding Certain Officers, in violation of 18 U.S.C. §231 and 18 U.S.C. §111(a), (1), respectively, along with five misdemeanor offenses.[1]  He appeared initially in this Court on October 14, 2021, before Magistrate Judge G. Michael Harvey, who released the defendant without objection from the government on personal recognizance with conditions. (ECF Doc. 8, Oct. 14, 2022)  Since then, he has what appears to be an unblemished record of compliance with the release conditions Judge Harvey imposed.

---

[1] They are: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Engaging in Physical Violence in a Restricted Area or Grounds, in violation of 18 U.S.C. §1752(a)(4); (d) Disruptive Conduct in the  Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), and (e) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating").

2. As the result of a Plea Agreement ("PA") with the government, the defendant entered a plea of guilty on September 6, 2022, to Count Two of the indictment (Assault), which had been docketed on Oct. 29, 2021. Under the terms of the agreement, the government will dismiss at sentencing the remaining counts. Count Two embraces

4. Defendant and his counsel reviewed the Draft PSI (ECF Doc. 35) and lodged an objection to it, specifically the four-level enhancement for the use of a "dangerous weapon," under USSG §2A2.2(b)(B). (PSI, page 7, ¶32) The defendant does not concede that it applies, or should apply, based on the defendant's conduct and the nature of the object used (an empty coffee mug) in this case.[2]

5. The defendant has no record of criminal arrests, convictions, or pending charges. (PSI, pp. 8-9, ¶¶42-49)

6. The defendant was not a part of an organized group – peaceable, paramilitary, extreme or violent – on January 6, and has never been a member of one. He came here as an individual, unassociated with others, to exercise his First Amendment right to speak as he chose.

7. The defendant traveled to Washington to protest the certification of the electoral college vote. He went to the Capitol, part of a group of other protesters gathered on the north side of the U.S. Capitol. While there, he observed police officers in riot gear who he thought, rightly or wrongly, were treating too roughly two female protesters who were standing on the steps near the officers. The defendant threw an empty coffee mug at the officers, but it was not to harm them, certainly, because the empty mug could not have harmed officers outfitted as they

---

[2] Counsel noted an objection in ECF Doc. 34 ("Parties Obligation" form). Counsel did not realize until reviewing the docket in preparation of this memorandum that his objection was filed in an improper format. That will be corrected expeditiously. Counsel adds that the final PSI notes the substantive objection but did not remove the 4-level enhancement for "dangerous weapon" to which the defendant objected. (ECF, Final PSI, page 7, ¶32)

were.  The defendant's act was more as a rebuke, made in hopes that they would desist from the two protesters as they were. About twenty minutes later, he was part of a group in a standoff with a line of officers on another side of the Capitol.  He threw at the officers an unknown liquid from a pail or bucket he found on the ground where he stood.[3]  In response, an officer in the line fired what the defendant believes was a rubber bullet.  It struck the defendant in the mouth, breaking his jaw, displacing several teeth, causing considerable bleeding.  He was removed by EMTs and taken by ambulance to Prince George's County Hospital for emergency surgery and remained there overnight. (ECF Doc. 1, "Criminal Complaint," page 5)  Aftereffects of the injury and surgery remain, and he is still without replacements for some of the teeth he lost.

8. Nonetheless, the defendant recognizes that his conduct could have had the effect of further exciting other protesters and encouraging similar acts.

8. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the

---

[3] The government's sentencing memo says that it was unable to establish which assault occurred first. (Doc. 33, page 5, ftn. 2)  It is counsel's understanding that the coffee mug throw occurred first, followed about twenty minutes later by the throwing of the liquid at the line of officers. It was then the defendant was struck by a projectile that broke his jaw and caused heavy bleeding, in effect incapacitating him. Some time later, EMTs arrived to bring him to Prince George's County Hospital.

defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

9.. The government recommends a sentence of twenty-seven (27) months incarceration[4], three (3) years supervised release, and the payment of $2,000 (two thousand dollars) in restitution, an amount the defendant has already agreed to pay. (ECF Doc. 33, page 1)  The U.S. Probation Office recommends a sentence of thirty-seven (37) months incarceration, three (3) years supervised release, $2,000 in restitution and a $100 special assessment.  (ECF Doc. 37, page 1)

10. The defendant has objected to the four-level enhancement the U.S Probation Office added to the offense level.[5] The government did not seek such an enhancement in the Plea Agreement; the parties agreed not to seek upward or downward departures from the Estimated Guideline Range set forth in the Agreement; and the government, though it did not object to the Final PSI, abides by the calculation in the Plea Agreement (ECF Doc. 27, pp. 3-4).[6]  It has requested a sentence of imprisonment of 27 months, the midpoint of the guideline range anticipated by the agreement, at an offense level 17, criminal history category I. (ECF Doc. 33,

---

[4] This recommended term is within the anticipated range of the Plea Agreement of 24-30 months, based on adjusted offense level 20.

[5] That objection appears as an attachment to Doc. 34, "Parties Obligation and Response to Presentence Report," filed by the defendant and is recorded in the Final PSI, Doc. 36 at page 20. (Note: The original "Parties" form was filed in error, as it failed to include as an attachment the stated objection, which was filed separately. Tiffany Gough of the Clerk's Office has corrected the error by adding the Parties form to Doc. 34, the written objection.

[6] *See also* Government's Sentencing Memorandum, ECF Doc. 33, page 8.

pp. 7-8)[7]  The defendant therefore requests that the Court find that such an enhancement should not apply.

12. The defendant is a hard-working member of a close family.  He lives with his mother and several of his siblings, and contributes to the expenses the family incurs.  He has shown respect to the court at the previous hearings which took place before this Court's predecessor, Judge Emmet G. Sullivan, and comes across as a friendly young man.

13.  The defendant seeks a variance from the low end of the guideline range of 24 months.  He bases his request on the following factors.  Up until January 6, 2021, he had gone through life – adolescent and adult – with no criminal arrests or convictions.  It is reasonable to conclude that he has been a law-abiding citizen during those 30 years.  This case represents the first commission of criminal conduct on his part.

14. The defendant takes exception to the government's contention that "his behavior on January 6…demonstrated that he poses such a future risk." (ECF Doc. 33, page 10, "Specific Deterrence")  The events of January 6 were unique in our nation's history; one hopes their like will not be seen again.  It is hard, therefore, to imagine that the defendant would have such an opportunity for repeat criminal behavior of this kind.  More important, this experience has had a chastening effect on him; his physical injuries, apart from or in addition to his prosecution, will discourage him from becoming involved in such quixotic, potentially dangerous adventures in the future.

15. The defendant suffered a grievous wound as the result of his conduct.  But it would be presumptuous to say  the defendant  "has been punished enough."  For one thing, he was not

---

[7] The government reserved the right to request an upward departure for "Terrorism" pursuant to USSG 3A1.4, n. 4, but has chosen not to do so.  It did not reserve such a right to request an enhancement or upward departure for use of a dangerous weapon under USSG 2A2.2(b)(2)(B) and has not incorporated it in its sentencing recommendation.

detained during the pretrial and presentence periods; the government did not seek detention and the defendant has been on release – fully compliant with his conditions, at that – during the past nearly one and half years.  He was able to work in the community, spend time with family, and face little, if any, disruption in his daily life..  More important, it's the Court's responsibility to decide what constitutes a sufficient punishment for the crime.  One can recognize, though, that the defendant has paid a great price for his misconduct: his jaw was broken, teeth were displaced, he was hospitalized and endured the period of convalescence that followed.  He suffers residual effects from the injury, remains without several of the teeth he lost.  This price is one that many of the other protesters and rioters fortunately did not have to pay.  The defendant understands that he brought this injury on himself.

16. Given the defendant's lack of a criminal history, contrasted with his intemperate conduct on January 6, he must wonder what got into him on that day.  It can be attributed partly to the agitation of the crowd, its excitable emotions, to feelings of betrayal at the results of the recent election. Crowds can become mobs, then riots, in such situations.  The defendant asks the Court to take those factors into account when judging his behavior on that day.  It might even be worthwhile for the Court to ask him at sentencing what prompted to act as he did.

17. In the circumstances, on the assumption that the Court is likely to impose a sentence of incarceration, the defendant submits that a period of one year and a day will suffice as an appropriate punishment, followed by three years of supervised release and a requirement of community service, the number of hours to be decided by the Court.  Such a sentence would permit the defendant, without too much interruption, to return to the community, reënter the work force, and resume his life as a law abiding citizen.  He will have a felony conviction that

cannot be expunged and will deprive him of certain rights and probably opportunities. But that conviction will be a reminder of the unwise, disrespectful, assaultive, out-of-character conduct he exhibited that day.

18. The probation office has found that he is a suitable candidate for self-surrender (ECF Doc. 37, page 3) so the defendant requests that he be permitted to do so. The defendant also requests that the Court recommend to the U.S. Bureau of Prisons that he be placed in a facility, consistent with his security level, as close to the Philadelphia area as possible.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Barry K. Disney, Esq., DOJ-CRM, 1331 F Street, N.W., Washington, D.C. 20005, this 2nd day of February, 2023.

/s/
_____
*Nathan I. Silver, II*